Affirmed and Memorandum Opinion filed July 10, 2003









Affirmed and Memorandum Opinion filed July 10, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01118-CR

____________

 

RUBEN
GARCIA, Appellant

 

V.

 

THE
STATE OF TEXAS, Appellee

 



 

On Appeal from the
177th District Court

Harris County, Texas

Trial Court Cause
No. 884,838

 



 

M EM O R A N D U M   O P I N I O N

Following a jury trial,
appellant Ruben Garcia was convicted of burglary of a habitation.  See Tex.
Pen. Code Ann. '
30.02(a)(1) (Vernon Supp. 2003). 
Asserting two points of error, appellant argues the evidence was legally
and factually insufficient to sustain his conviction.  We affirm. 









FACTUAL AND PROCEDURAL
HISTORY

This cause of action
arises from the August 6, 2001 burglary of a home in Baytown, Texas.  The sole witness to the offense was Anita
Flores, sister-in-law of the complainant, Zenaida Flores.  Anita lived in the home with complainant and
complainant=s
husband, Eli Flores. 

According to evidence
presented at trial, Anita and her boyfriend arrived at the Flores home at
approximately 7:30 pm the day in question. 
As Anita’s boyfriend backed Anita’s truck into the Flores garage, Anita
stood in the garage to help direct him. 
Although Anita was the first occupant of the house to return home that
eveningCand presumably the house
was emptyCAnita
heard a noise coming from the direction of the house.  She saw a doorknob turn and a person whom she
would later identify as appellant Ruben Garcia exit the house.  Appellant carried a video cassette recorder.

Upon seeing Anita,
appellant made a threatening gesture, and appellant and Anita stared at each
other for approximately three seconds.  
Appellant then covered his face, took off running, and jumped a 4’ fence
in the Flores’ backyard.  Although Anita
and her boyfriend gave chase and drove around the block in an effort to track
down the thief, their efforts were unsuccessful.  They called 9-1-1 and police arrived at the
scene.  Also arriving at the scene were
complainant and Anita=s
brother, Ernesto.  Complainant searched
her home and discovered a video cassette recorder was missing.  Also missing were a rifle, piggy bank,
jewelry, and some saws.[1]  








When asked to provide a
description of the intruder, Anita described an Hispanic male, wearing black,
baggy jeans, a copper-colored T-shirt, with a distinctive hairstyle.  She guessed he was about 5’4” tall.  When Ernesto, who was standing nearby and who
knew appellant by sight, heard Anita’s description, he suggested to police that
it sounded like appellant.  He added that
he had seen appellant in the vicinity of the Flores garage on two separate
occasions in recent weeks.  Appellant’s
father operated a mechanic’s shop immediately behind the Flores home, appellant’s
family lived in the area, and Ernesto knew appellant through Ernesto’s friendship
with appellant’s brother.

The night of the
break-in, police officers detained and brought two Hispanic males to Anita for
her identification as possible suspects. 
She indicated neither was involved in the burglary.  One week later, however, the police presented
Anita with a photo spread of six possible suspects; this time, she positively
identified appellant as the person she saw coming from the house and placed her
initials by his picture. 

At trial, Anita identified
appellant in court and testified she was certain about her identification of
appellant as the burglar.  She also
testified she would have been able to identify appellant even without the photo
spread. 

Complainant testified at
trial as well.  She testified that, in
the days proceeding the break-in, she was approached by appellant, who asked
for money.  She also testified that
appellant had been given permission to enter her home by her husband and
brothers-in-law, but on the date in question he did not have permission to
enter her home.

Appellant=s father and appellant
testified for the defense.  Appellant=s father testified that,
although it was possible appellant was in the area without his knowledge, he
did not see appellant during the summer of 2001.  He also testified that the fence separating
his and complainant=s
homes was 6 feet tall, not 4 feet. 

Appellant testified he
was in California on and around August 6, 2001 and that he had an alibi for the
date of the offense.  He testified he was
5’8” tall and that he once served time in prison for burglary of a habitation.

On October 30, 2002, a
jury found appellant guilty of burglary of a habitation and assessed punishment
at 25 years’ confinement in the Texas Department of Criminal Justice
Institutional Division.  Appellant gave
timely notice of appeal.








DISCUSSION

Asserting two points of
error, appellant contends that the facts were (1) legally and  (2) factually “insufficient to sustain [his]
conviction for burglary of a habitation for the reason that there was not
sufficient evidence to prove [his] identity as the perpetrator of the offense.”  Because Anita had only a few seconds to
observe the intruder, because her estimate of the intruder’s height varied four
inches from appellant’s true height, because the initial suggestion of
appellant as the intruder came from Ernesto, and because Ernesto knew appellant
only in passing through appellant’s brother, evidence was insufficient, he
claims, to prove appellant was the individual leaving the Flores home the night
of the burglary.  We disagree.

Standard of Review

In evaluating a legal
sufficiency challenge, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex.
Crim. App. 2000).  We determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319; 99 S. Ct. 2781, 2789 (1979); Clewis v.
State, 922 S.W.2d 126, 132 (Tex. Crim. App. 1996); Grant v. State, 989 S.W.2d
428, 432 (Tex. App.CHouston [14th Dist.]
1999, no pet.).  The issue on appeal is
not whether we, as a court, believe the State’s evidence or believe that
appellant’s evidence outweighs the State’s evidence.  Wicker v. State, 667 S.W.2d 137, 143 (Tex. Crim. App.
1984).  The verdict may not be overturned
unless it is irrational or unsupported by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991). 








The jury, as the trier of
fact, “is the sole judge of the credibility of the witnesses and of the
strength of the evidence.”  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  
The jury may choose to believe or disbelieve any portion of the
witnesses’ testimony.  Sharp v. State,
707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v.
State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  Id.

In evaluating the factual
sufficiency of the evidence, we view the evidence in a neutral light and set
aside the verdict only if (1) the evidence is so weak as to be clearly wrong or
manifestly unjust, or (2) the finding of a vital fact is so contrary to the
great weight and preponderance of the evidence as to be clearly wrong.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  Which standard applies has
generally depended on whether the complaining party had the burden of proof at
trial.  Id.   If the complaining party did not have the
burden of proof at trial, then the first, or “manifestly unjust standard,” has
applied.  Id.  If the complaining party on appeal had the
burden of proof at trial, then the second, or “against the great weight and
preponderance standard,” has applied.  Id.  

We must review the
evidence weighed by the jury tending to prove the existence of the elemental
fact in dispute, and compare it to the evidence tending to disprove that
fact.  Id. at 7.  Our review must be appropriately deferential
to avoid substituting our judgment for the fact finder=s.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996). 

Analysis

To prove the offense of
burglary of a habitation, the State must show (1) the accused  (2) without the owner’s consent, (3) entered
a habitation, (4) with intent, (5) to commit a felony, theft or assault.  Tex.
Pen. Code Ann. '
30.02(a)(1) (Vernon Supp. 2003); see also Carlock v. State, 8 S.W.3d
717, 722 (Tex. App.CWaco 1999, pet. ref=d).  Thus, the State must prove beyond a
reasonable doubt that the accused is the person who committed the crime charged.  Johnson v. State, 673 S.W.2d 190, 196
(Tex. Crim. App. 1984); Smith v. State, 56 S.W.3d 739, 744 (Tex. App.CHouston [14th Dist.] 2001, pet. ref’d).









Mistaken identity is not a defense.  Giesberg v. State, 984 S.W.2d 245, 251
(Tex. Crim. App. 1998).  Rather, it is a
defensive theory offered to negate the identity element of an offense.  Giesberg v. State, 945 S.W.2d 120, 124
(Tex. App.CHouston [1st Dist.] 1996), aff=d 984 S.W.2d 245 (Tex. Crim. App. 1998). 

For the purposes of proving reasonable doubt, direct and
circumstantial evidence are equally probative. 
Smith, 56 S.W.3d at 744; see also McGee v. State, 774
S.W.2d 229, 238 (Tex. Crim. App. 1989). 
Identity may also be proven by inferences.  See United States v. Quimby, 636 F. 2d
86, 90 (5th Cir. 1981); Roberson v. State, 16 S.W.3d 156, 167 (Tex. App.CAustin 2000, pet. ref’d).

Here, the State produced
the following evidence to show appellant was the individual who burglarized the
Flores home: (1) Anita’s testimony that the intruder was an Hispanic male, same
as appellant, with a similar, distinguishable hairstyle; (2) Anita’s
identification of appellant from a photo spread and again in court; (3)
complainant=s
testimony that appellant approached her for money just days before the incident
and that appellant previously had been in her home; (4) Ernesto’s testimony
that he saw appellant in the Flores garage and near the Flores home on two
separate occasions prior to the intrusion; and (5) appellant=s father=s testimony that, in
spite of appellant’s alibi claim, appellant could have indeed been in Baytown
on the day in question.  The State also
produced evidence that appellant’s father operated a mechanic’s shop
immediately behind the Flores home, and appellant once served time for burglary
of a habitation.  Although appellant
produced several pieces of evidence to suggest he was working in Florida in early
2001 and in California in late 2001, he proffered no evidence other than
his own testimony to suggest he was working in California at the time of the
burglary.[2]








To determine witness reliability when a suspect is
identified, the totality of the circumstances must be reviewed, including: (1)
the witness=s opportunity to view the accused;
(2) the degree of attention exhibited by the witness; (3) the accuracy of the
witness’s description; (4) the witness’s level of certainty; and (5) the time
between the crime and the confrontation. 
Harvey v. State, 3 S.W.3d 170, 174 (Tex. App.CHouston [14th Dist.] 1999, pet. ref’d),
citing Garza v. State, 633 S.W.2d 508, 512B13 (Tex. Crim. App. 1982).  A conviction may be based on the testimony of
a single eyewitness.  Aguilar v. State,
468 S.W.2d 75, 77 (Tex. Crim. App. 1971); see also Pitte v. State, CS.W.3d.C, 2003 WL 1391561, at *6 (Tex. App.CTexarkana March 21, 2003, no pet.
h.).

Here, we conclude Anita’s
identification was reliable.  She
testified she observed the intruder in clear light, had a direct view of the
intruder, and looked directly into the intruder’s eyes.  In addition, she picked appellant out of a
photo spread less than a week after the break-inCdespite
never having seen him before the date in questionCand
she testified she was very sure of her identification. 

Moreover, Ernesto and
complainant testified they saw appellant in the vicinity of the Flores garage
just weeks before the burglary.  Although
“[m]ere presence of an accused at the scene of an offense is not alone
sufficient to support a conviction . . . it is a circumstance tending to prove
guilt which, combined with other facts, may suffice to show the accused was a
participant.”  Mabra v. State, 997
S.W.2d 770, 774 (Tex.
App.CAmarillo
1999, pet. ref’d), citing Johnson, 537 S.W.2d at 18.  








From the foregoing, we
conclude that, when viewing the evidence in the light most favorable to the
prosecution, a rational jury could have found the essential elements of
burglary of a habitationCincluding
the element of appellant’s identityCbeyond
a reasonable doubt.  Thus, we conclude
there was legally sufficient evidence to support appellant’s conviction.  See Turro, 867 S.W.2d at 47.

We also find that, after
a neutral review of all the evidence, the evidence is not so weak as to be
clearly wrong or manifestly unjust, or so contrary to the great weight and
preponderance of the evidence as to be clearly wrong.  Therefore, we conclude there is factually
sufficient evidence to support appellant’s conviction as well.  See Johnson, 23 S.W.3d at 11.

Finding both legally and factually
sufficient evidence to sustain appellant’s conviction for burglary of a
habitation, we overrule appellant=s
points of error and affirm the judgment of the trial court.  

 

 

/s/        John S. Anderson

Justice

 

 

 

Judgment rendered and Memorandum Opinion filed July 10, 2003.

Panel consists of Justices Anderson, Seymore, and Guzman.

Do Not PublishCTex. R. App. P. 47.2(b).











[1]  At trial,
complainant testified that the rifle, piggy bank, jewelry, and saws were
discovered missing  a few days prior to
August 6.





[2]  At trial,
appellant claimed he was working in California in August, 2001 and so had an
alibi for the date of the burglary.  He
testified that because he worked for “cash money,” he could not substantiate
this claim with documentary proof. 
Nevertheless, appellant submitted the following eleven exhibits at trial
to “corroborate his testimony” about his alibi: (1) an employee badge, dated
March 3, 2000, from the “Houston Safety Council,” allegedly issued to appellant
by Safway Steel Products Scaffolding, a Houston firm with offices in Florida
and California; (2) a pay stub from Safway Steel Products Scaffolding in
Florida issued to appellant for the pay period of April 7B13, 2001; (3) a union card issued to appellant from a
California carpenter’s union indicating appellant paid dues to the union on
October 8, 2001; (4) a union work-referral slip from the California carpenter=s union with no date; (5) a training card issued to
appellant from Chevron Refinery in California, dated October 11, 2001; (6) a
Chevron Refinery certification card dated October 29, 2001 indicating appellant
was given medical and fitness tests October 11 and 22, 2001; (7) a pay stub
issued to appellant from Safeway Scaffolding in California for the pay period
ending November 4, 2001; (8) a termination notice from Interstate Scaffolding,
Inc., issued to appellant November 13, 2001; (9) a second union work-referral
slip from the California carpenter’s union with no date; (10) a pay stub from
Hightower Staffing, Inc., issued to appellant for the pay period ending
December 16, 2001; and (11) a California automobile certificate of title issued
to a person named Valadez Anarosa Marquez, dated September 21, 2001, which
appellant claims corroborates appellant’s purchase of Marquez’s car in April,
2002.