**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Leo QUIMBY, Defendant–Appellant.**

**No. 79–5572**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Unit A

Feb. 2, 1981.

John W. O'Dowd, Houston, Tex. (Court–appointed), for defendant–appellant.

M. Lawrence Wells, Asst. U.S. Atty., Tyler, Tex., for plaintiff–appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

PER CURIAM:

Defendant, Leo Quimby, appeals judgment entered on a jury conviction for two counts of willfully failing to supply information regarding gross income to the Internal Revenue Service (IRS), in violation of 26 U.S.C. § 7203. He asserts on appeal (i) his arrest warrant was not supported by a showing of probable cause under oath pursuant to F.R.Crim.P. 9(a), (ii) the Eastern District of Texas lacked jurisdiction to try his case, (iii) denial of his motion to disqualify the trial judge constituted error, (iv) the evidence presented was insufficient to support a finding of guilt against him, and (v) District Court erred in refusing to give his requested jury charge. Finding all his contentions without merit, we affirm.

## I.

Quimby had filed a valid tax return for 1972. In 1974, however, Quimby was notified by the IRS his Form 1040 submitted for 1973 was not acceptable as an income tax return and failure to file the required return would subject him to prosecution. Quimby again failed to file a valid Form 1040 for the tax year 1974.

For the tax years of 1975 and 1976, Quimby earned a gross income of $7,524 and $7,992, respectively, while employed at the Rusk State Hospital in Rusk, Texas, which after subtracting his wife's community portion showed Quimby earned a gross income of $3,762 in 1975 and $3,996 in 1976. These amounts of gross income required him to file federal income tax returns for 1975 and 1976.

Quimby submitted an IRS Form 1040 for both 1975 and 1976. The 1975 form, however, contained no financial information from which his tax liability could be computed. Rather, the form disclosed only his name, address, and other basic identifying information before revealing the words "Fifth Amendment Claimed Against Self–Incrimination" in the blank for filling in wages. In addition, attached to the form with various other materials was a statement with Quimby's signature protesting the tax laws. Similarly, the Form 1040 submitted for 1976 was not signed but contained the following statement at the bottom of the first page:

I refuse to sign this instrument, which it is believed that nobody understands, because it would tend to incriminate me or my property, therefore, I claim the Fifth Amendment in declining to do so...

Consequently, Quimby was charged by information in the Northern District of Texas with two counts of willfully violating 26 U.S.C. § 7203 for the calendar years 1975 and 1976. The information was neither verified nor supported by affidavit. It contained a brief statement of the facts underlying the crimes charged and was signed by an Assistant United States Attorney. On August 3, 1978, Quimby filed a motion to dismiss the information on many grounds,

one of which was that neither the arrest warrant nor the information was supported by probable cause. In response, the government filed an affidavit executed on July 19, 1978, summarizing the information derived from the special agent's investigation of Quimby's tax liability for 1975 and 1976.

Meanwhile, on August 14, 1978, Quimby filed a motion requesting the Court to transfer the case from the Northern District to the Eastern District where Quimby allegedly resided. The government did not oppose Quimby's motion to change venue and it was subsequently granted by the Court.

Prior to trial, Quimby filed a motion to dismiss for lack of jurisdiction, arguing among several other grounds, that since the alleged offense occurred in the Western District, and Quimby resided in the Eastern District, the Northern District was an improper court to institute the prosecution. Since Quimby filed the complained of tax forms in Dallas, Texas, which is within the jurisdiction of the Northern District of Texas, the motion was orally denied.

Also prior to trial, Quimby filed a motion to disqualify Judge Steger on the basis Judge Steger had a bias and prejudice against him because he had filed three lawsuits against Judge Steger. Judge Steger requested Chief Judge Woodward of the Northern District to rule on the motion. Chief Judge Woodward denied the motion because (i) it was unsupported by affidavit, and (ii) the ground alleged did not show Judge Steger had any bias and prejudice against Quimby.

Quimby then filed a second motion to disqualify Judge Steger. Attached to the motion was an exhibit indicating on May 5, 1978, Judge Steger had recused himself from a civil suit filed by Quimby. In the affidavit, Quimby swore he was not currently suing Judge Steger but he was not pleased with Judge Steger's actions in other proceedings and "[Judge] Steger holds prejudice and bias against ... Defendant for reasons known only to himself." Quimby then filed a second affidavit complaining of Judge Steger's actions in the criminal pro-

ceeding. Judge Steger denied the motion on May 3, 1979.

On September 4, 1979, Quimby filed an amended motion to disqualify, without alleging any new grounds for disqualification. This motion was denied first orally and subsequently by a signed formal order.

The matter went to trial before a jury on September 4, 1979. A courtroom identification of Quimby was made by Rusk State Hospital co–employees who had seen him at the hospital the past seventeen years. In his defense, Quimby called several character witnesses who testified they believed Quimby did not intend to violate the law when he filed the 1040 forms for 1975 and 1976 because he believed his actions were lawful.

At the close of all the evidence, Quimby requested an elaborate, extended charge on good faith. The District Court refused, however, issuing the following instruction:

> You may not treat the Defendant's belief of the unconstitutionality of the income tax as a possible negation of criminal intent. The Defendant's motivation in this case, the fact that he was engaged in a protest in his sincere belief that he was acting in good cause, is not an acceptable legal defense as justification.

and

> . . . an act or omission is not willful if it was the result of negligence, inadvertence, accident or reckless disregard for the law, or *due to a good faith misunderstanding by the taxpayer as to his legal obligation to supply information on a tax return.*

After the jury returned a verdict of guilty, judgment was entered against Quimby on September 6, 1979. Quimby, appealed twelve days later on September 18, 1979, requesting to proceed in forma pauperis. On September 21, 1979, the District Court issued an order stating it was unnecessary for the court to grant Quimby's request for appointed counsel and authorized him "to proceed on appeal in forma pauperis without authorization by this Court."

Subsequently, Quimby filed a motion for summary reversal with this Court on the ground the criminal information filed in his case, and the arrest warrant based on the information, were not based on probable cause or supported by an affidavit pursuant to F.R.Crim.P. 9(a). This Court denied the motion on March 4, 1980.

II.

Quimby's notice of appeal is untimely since it should have been filed within ten days of entry of the judgment of conviction, but was filed within twelve days. F.R.App.P. 4(b). The requirement of 4(b) is jurisdictional. *Sanchez v. Board of Regents,* 625 F.2d 521, 523 (5th Cir. 1980). Upon a showing of excusable neglect, the District Court may, with or without motion and notice, extend the time for filing a notice of appeal. *Id.* at 523. Although the Court did not explicitly state it was making a finding of excusable neglect for extending the time for filing a notice of appeal, we conclude its ruling on the motion to appoint counsel and allow appeal in forma pauperis constituted such a finding.

With regard to the contention that F.R.Crim.P. 9(a) requires an arrest warrant issued on the basis of a criminal information and be "supported by a showing of probable cause under oath." This error has nothing to do with his conviction since it is "clear that defects in the procedures through which [a] defendant was brought before the court do not void his subsequent conviction." *United States v. Millican,* 600 F.2d 273, 275 (5th Cir. 1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980) (*citing Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). A defendant cannot upset his conviction on the argument no probable cause was previously shown. *Id.* at 277–78.

Quimby's allegation that the District Court lacked jurisdiction over him is similarly without merit. Quimby was required to file his income tax returns in Dallas which is located in the Northern District. The Northern District of Texas was the proper venue to institute the prosecution

since the commission of a 26 U.S.C. § 7203 violation is considered to occur in the judicial district in which the taxpayer is required to file. *United States v. Calhoun,* 566 F.2d 969, 973 (5th Cir. 1978). Once venue was transferred to the Eastern District upon Quimby's motion, the right to be tried in the district in which the crime was committed was waived.

■ Nor does Quimby's contention the trial judge should have been disqualified require reversal of his conviction. Quimby's pleadings indicate the source of any bias or prejudice Judge Steger might have had against him was because of judicial actions rather than personal. In order "to be disqualifying, the alleged bias or prejudice must stem from an extrajudicial source." *United States v. Serrano,* 607 F.2d 1145, 1150 (5th Cir. 1979).

■ Quimby contends the evidence was not sufficient to show he was the person who committed the crimes charged in the information nor that he willfully failed to supply the necessary tax information. Both of these arguments lack merit.

■ At trial, Quimby was identified unequivocally as an employee of Rusk State Hospital for the past seventeen years. No other Leo Quimby worked at the hospital. Identity of a criminal defendant may be proven by inference and circumstantial evidence.

■ "The elements of an offense under Section 7203 involve proof of failure to file and willfulness in doing so." *United States v. Buckley,* 586 F.2d 498, 503 (5th Cir. 1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979). A defendant's "good motive" is not relevant in determining whether his act was willful under § 7203. *United States v. Douglas,* 476 F.2d 260, 263 (5th Cir. 1973). Section 7203 "only requires that the act be purposefully done with an awareness of the action and not just negligently or inadvertently." *Id.*

Drawing all reasonable inferences in a light most favorable to support the verdict, the evidence reveals in 1974 Quimby had received and replied to a letter from an IRS employee informing him his 1973 return did not comply with tax laws and would subject him to criminal penalties unless corrected. This and other evidence amply supports a finding Quimby knew the law required him to file a proper tax return and he intentionally failed to do so. *See United States v. Wade,* 585 F.2d 573, 574 (5th Cir. 1978), *cert. denied,* 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979). Even accepting Quimby's blanket claim that the Fifth Amendment privilege was in good faith, it did not automatically and completely insulate him from prosecution. *Id.* (*citing United States v. Johnson,* 577 F.2d 1304 (5th Cir. 1978)).

■ As a final contention, Quimby charges the District Court erred in not giving his requested instruction on the issue of good faith. The instruction given was legally adequate and substantially the same as the acceptable portions of the charge as requested.

The conviction on two counts of willfully failing to supply information about gross income to the IRS was correct.

AFFIRMED.