**AFFIRM; and Opinion Filed October 30, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00777-CR

**MICHAEL J. MARBLE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

### On Appeal from the 194th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1352953-M

## MEMORANDUM OPINION
Before Justices Lang-Miers, Brown, and Schenck
Opinion by Justice Schenck

Michael J. Marble appeals his conviction for the capital murder of Roberta Moore, challenging the legal sufficiency of the evidence. We affirm his conviction. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

At the time of her death, Roberta Moore was sixty years old. She lived at the Quail Hollow Apartments. The day before her death, Moore's sister and daughter visited her, as they often did. Moore and her sister went shopping while her daughter cleaned the apartment. In addition to cleaning the apartment, Moore's daughter washed the white shoelaces from Moore's tennis shoes.

In the early morning hours of the next day, Moore was found dead in the master bedroom of her apartment. Her wrists and ankles were bound with white shoelaces; a ligature, possibly a

gray string or shoelace, was around her neck. A window to the apartment was broken and footprints were present in a small flower bed underneath the window. A number of items were missing from Moore's apartment, including a 32 inch flat-screen television that her daughter had given her for Christmas and a ring given to her by her son. The apartment was in a state of disarray in comparison to its state the day before when Moore's sister and daughter left the apartment. Police found Moore's cell phone several hours after her murder on the grounds of a nearby church. The cause of death was determined to be strangulation, most likely by a ligature found around Moore's neck. Appellant lived in the same apartment complex with Moore.

The night before Moore's death, appellant and Jeffrey Parks smoked crack cocaine at appellant's apartment. They left appellant's apartment for a short period to "shoot dice" with some other men. They did so at the walkway to Moore's apartment. At one point, Moore came out of her apartment to complain and got into a verbal altercation with some of the young men about their gambling and loud talking. One of the young men (known as "Smurf") told her to "get her old ass in the house before somebody do something to her." Parks told the young men not to disrespect her. The dice shooting ended before midnight and Parks and appellant went back to appellant's apartment to smoke more crack cocaine. While Parks was at appellant's apartment, several drug dealers pressured appellant for money to pay for the drugs. They gave him twenty-four hours to pay. Parks did not believe appellant had the money to pay them. Parks left appellant's apartment about 4:00 a.m.

Parks next saw appellant at about 6:00 a.m. that same day Sunday January 6, 2013. He described appellant as visibly distraught. He asked Parks if he knew "where he could sell a TV and some jewelry." Parks told him he would have to go to the pawnshop. Appellant then told Parks that "he did something that he didn't really want to do." He told Parks he and Smurf had broken into "some lady's" house and stole a television on the assumption that no one was inside

at the time. He said Smurf broke a window with a rock and then crawled through the window and opened the door for appellant. When they turned around, a woman was standing there. Appellant said he wrestled with her, and he did not know if, as a consequence, she was asleep or dead. When Parks was later interviewed by the police at length he eventually told them about this exchange with appellant.

Police gathered evidence at the scene, including the shoelaces that bound and strangled Moore and Moore's cell phone. As part of the investigation, buccal swabs were taken with consent from potential witnesses Jamison Lair ("Smurf"), Damien Huff, and Reginald Lewis. Appellant's DNA was obtained pursuant to a search warrant. Appellant was included as a possible contributor to DNA profiles from the shoelaces and the cell phone.

Appellant was charged by indictment with the capital murder of Moore. He entered a plea of not guilty and waived a jury. Trial proceeded before the court. At the conclusion of the evidence, the trial court found appellant guilty of the offense charged and sentenced him to life imprisonment. He challenges the sufficiency of the evidence to establish his identity as the perpetrator and of the aggravating element of burglary.

STANDARD OF REVIEW

When conducting a legal-sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979). In so doing, we assess the evidence "in the light most favorable to the prosecution." *Id.* This same standard applies equally to circumstantial and direct evidence. *Burden v. State,* 55 S.W.3d 608, 613 (Tex. Crim. App. 2001). After giving proper deference to the factfinder's role, we will uphold the conviction unless a rational factfinder must have had reasonable doubt as to an essential element. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim. App. 1992). Viewed through this lens, we find there is

ample evidence to support appellant's conviction for capital murder.

DISCUSSION

In his first issue, appellant claims the evidence is legally insufficient to support his conviction for capital murder. The crux of appellant's argument is the evidence is insufficient to prove his identity as the perpetrator.

There is no question that the State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *See Johnson v. State,* 673 S.W.2d 190, 196 (Tex. Crim. App. 1984). Identity may be proved by either direct or circumstantial evidence. *See Earls v. State,* 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). In fact, identity may be proven by reasonable inference. *See United States v. Quimby,* 636 F.2d 86, 90 (5th Cir. 1981). When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused. *See Sepulveda v. State,* 729 S.W.2d 954, 957 (Tex. App.—Corpus Christi 1987, pet. ref'd). For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989).

The instant conviction rests on circumstantial evidence. In support of its case against appellant, the State offered testimony from DNA analyst Amanda Webb. There is no challenge before this Court to the admission of this expert testimony. Webb testified appellant was included as a possible contributor to DNA profiles from the following items, along with the probability that appellant was the contributor:

> From a swabbing of a shoelace labeled from the neck, a conservative random match probability was one in 661 people;[1]
>
> From a swabbing of a shoelace labeled from feet, the most conservative random match probability was one in 6,370 people;

---

[1] Meaning only 1 in 661 people have this DNA marker and appellant is one of them.

–4–

From a swabbing of a shoelace from left hand, the most conservative random match probability was one in 268,000 individuals;

For the cell phone, a statistic was made from a swabbing, and the probability of selecting at random an unrelated individual that would be included as a possible contributor or with that same DNA profile that would match [appellant], the most conservative random match probability would be one in 6.4 billion. There is approximately 7.1 billion people on the earth currently, since the last census. And this probability was one in 6.4 billion, so it is just slightly less than the population of one earth.

From a swabbing of a shoelace from right hand, the most conservative random match probability, one in 3.66 quadrillion. That is over, a little bit over 500,000 earths. We would expect to see that profile one time in that context.

To put it another way, the probability of finding another equally likely source for the DNA found on the shoelace from the right hand would require a population equivalent to 500,000 of the current earth human population.

Jamison Lair's DNA profile was included on a stain from the cell phone, but it was a common profile, with a probability of one in every two people. Lair's DNA profile was excluded from two swabbings from the cell phone and was not included on the fingernail and shoelace items. Reginald Lewis and Damien Huff's DNA profiles were excluded from all items tested.

In addition to the overwhelming DNA evidence the State offered testimony from Parks and two inmates, who testified to appellant's confessing to the crime while awaiting trial. Appellant claims the testimony from these witnesses is not credible. Whether their testimony is credible and the weight to be given same is up to the trial judge when he sits as the finder of fact. *See Powell v. State*, 479 S.W.2d 685, 687 (Tex. Cr. App. 1972). He is authorized to accept or reject any or all of the testimony of the witnesses for either the State or the accused. *Rhodes v. State*, 441 S.W.2d 197, 200 (Tex. Cr. App. 1969). Parks gave appellant a motive for committing a theft crime — he needed money to pay drug dealers — but that motive could also be inferred from the fact that the apartment was ransacked and items were stolen from the apartment. Parks

also testified to what appellant told him; appellant made a general statement of his commission of burglary, theft of a television and jewelry, and wrestling with a lady to the extent that he did not know if he left her asleep or dead. Both of the inmates testified appellant told them he committed this crime. They both also admitted that they did not get along with appellant in jail and that appellant had threatened them.

A rational trier of fact could have disregarded most or all of Parks' testimony and all of the inmates' testimony and still have found beyond a reasonable doubt that appellant killed Moore based on appellant's DNA profile on the ligatures and on her cell phone. *See Roberson v. State,* 16 S.W.3d 156, 168 (Tex. App.—Austin 2000, pet ref'd). Viewing the evidence in the light most favorable to the trial court's judgment, we conclude that a rational trier of fact could have found beyond a reasonable doubt appellant was the perpetrator of this crime. Accordingly, we overrule appellant's first issue.

In his second issue, appellant argues the evidence is legally insufficient to support his conviction for capital murder because the aggravating element of burglary was not proved beyond a reasonable doubt.

A person commits the offense of capital murder if he intentionally commits a murder in the course of committing or attempting to commit the offense of burglary. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West 2011). A person commits burglary if, without the effective consent of the owner, the person enters a building or habitation and commits or attempts to commit a felony, theft, or an assault. *Id.* § 30.02(a)(3). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of that property. *See id.* § 31.03(a). The State must prove a nexus between the murder and the theft, i.e., the murder occurred in order to facilitate the taking of the property. *Ibanez v. State,* 749 S.W.2d 804, 807 (Tex. Crim. App. 1986).

The broken window for entry and the ransacked condition of Moore's apartment establish a lack of consent to enter Moore's apartment. The fact that appellant's DNA was on the ligatures and Moore's cell phone and the television, ring, and cell phone were missing establish a theft occurred and the requisite nexus between the murder and the theft. This evidence alone, or in combination with the evidence of appellant's attempting to sell a television and jewelry, presumably to pay overdue drug debts, is sufficient.

After reviewing all of the evidence under the appropriate standard of review, we conclude the evidence is legally sufficient to support a finding that appellant committed burglary in connection with the murder. We overrule appellant's second issue.

## CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

140777F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL J. MARBLE, Appellant

No. 05-14-00777-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1352953-M.
Opinion delivered by Justice Schenck.
Justices Lang-Miers and Brown
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of October, 2015.