

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00055-CR

**GERALD DEAN AINSWORTH,**

                                                        **Appellant**

v.

**THE STATE OF TEXAS,**

                                                        **Appellee**

---

**From the County Court**
**Robertson County, Texas**
**Trial Court No. 18-324-CR**

&

### No. 10-20-00056-CR

**GERALD DEAN AINSWORTH,**

                                                        **Appellant**

v.

**THE STATE OF TEXAS,**

                                                       **Appellee**

---

**From the County Court**
**Robertson County, Texas**
**Trial Court No. 18-325-CR**

# MEMORANDUM OPINION

This case involves allegations that appellant, Gerald Dean Ainsworth, illegally tapped into a water line of the Twin Creek Water Supply Corporation ("Twin Creek") and stole water for a period of time. In one issue in appellate cause number 10-20-00055-CR, appellant challenges his conviction for theft of services, arguing that the evidence is legally insufficient given that the State failed to charge the instant offense as an aggregated theft. In two issues in appellate cause number 10-20-00056-CR, appellant contends that the State failed to show: (1) damage or destruction to the water main; and (2) that appellant was the person who caused the purported damage. We affirm the trial court's judgments in both appeals.

## I.    THE CHARGING INSTRUMENT

In appellate cause number 10-20-00055-CR, appellant argues that the evidence is insufficient to support his conviction for theft of services because there was no evidence of a constant water flow to appellant's trailer, and therefore, the theft was complete at each turn of the appellant's water faucet. According to appellant, each completed theft was a separate, discrete event and, without the aggregating language of section 31.09 of the Texas Penal Code, did not rise to the level of a theft of $750 or more in value, but less than $2,500.

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the

verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

The record contains testimony from Mary Caudle, the general manager at Twin Creek, who stated that appellant did not have a right to connect a hose at the corporate stop and to turn on the corporate stop to divert water flow to his water hose. Caudle also testified that there was no way to track how much water went through the hose without a meter, and that the company would never enter into any sort of service agreement to provide water to a customer without a meter. Later, the State offered State's Exhibit 11, which is Twin Creek's estimate of the water used by appellant by way of his tap into the water line. Caudle explained that State's Exhibit 11 provided estimates from October 2016 through March 2018, though the estimates were broken into three parts to reflect rate changes. During this time period, the company estimated that appellant used 4,833 gallons per month. This calculation was based on a prior reading from a removed meter from appellant's line that showed appellant used 14,500 gallons over three months.[1] From October 2016 through April 2017, the company estimated that appellant misappropriated $381.64 in water. For May 2017 through January 2018, and February 2018 through March 2018, the company estimated that appellant misappropriated $525.69 and $120 in water, respectively. In total, the company asserted that the total value for all

---

[1] Caudle explained that the removed meter monitored water flow to appellant's house and that the meter was removed because someone had "removed the lock and water service was going up to that house [appellant's trailer]."

eighteen months of lost revenue due to appellant illegally tapping the water line was $1,027.73.

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found that appellant asserted "control over the disposition of services of a water supply, to which defendant was not entitled, namely, water from Twin Creek Water Supply, of the value of $750 or more but less than $2,500 from Twin Creek Water Supply" with intent to avoid payment for the service and knowing that the service was provided only for compensation. *See* TEX. PENAL CODE ANN. § 31.04(a)(2); *see also Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732-33; *Villa*, 514 S.W.3d at 232. Further, we note that Caudle testified that there was no way to track exactly how much and when the water flowed through appellant's water hose without a meter. In a situation where value is unascertainable, section 31.08(c) of the Texas Penal Code provides that "[i]f property or service has value that cannot be reasonably ascertained by the criteria set forth in Subsections (a) and (b), the property or service is deemed to have a value of $750 or more but less than $2,500." TEX. PENAL CODE ANN. § 31.08(c). We therefore overrule appellant's sole issue in appellate cause number 10-20-00055-CR.

## II.    CRIMINAL MISCHIEF

In appellate cause number 10-20-00056-CR, appellant challenges his conviction for criminal mischief. Specifically, appellant challenges the sufficiency of the evidence for the damage or destruction and identity elements.

A person commits the offense of criminal mischief when he intentionally or knowingly damages or destroys tangible property without the effective consent of the owner. TEX. PENAL CODE ANN. § 28.03(a)(1); *see Miller v. State*, 343 S.W.3d 499, 501 (Tex. App.—Waco 2011, pet. ref'd).

> The criminal mischief statute is worded disjunctively to allow for prosecution if a person "damages or destroys tangible property . . . ." When the prosecution alleges conjunctively in a charging instrument that a defendant "damages *and* destroys" tangible property under section 28.03(a)(1), the State can prove either damage to property or destruction of property to support the charge. Under the statute, the offense is complete if the property is damaged though not destroyed. "Destroy" could refer to total or partial destruction.

*Adams v. State*, 222 S.W.3d 37, 48 (Tex. App.—Austin 2005, pet. ref'd) (citations omitted) (emphasis in original).

In the instant case, appellant was charged by information with,

> intentionally and knowingly damag[ing] and destroy[ing] tangible property, to wit: water pipes, by connecting pipes, without the effective consent of Twin Creek Water Supply, the owner of the property, and did then and there intentionally and knowingly cause to be diverted, in whole or in part, public water supply by connecting the water supply to his home.

In other words, the State alleged criminal mischief in the conjunctive, meaning that the State could prove either damage to property or destruction of property to support the charge. *Id.*

At trial, the State presented photographic evidence by way of State's Exhibit 4 of the damaged main line corporate stop with appellant's hose still attached. There was no sign of the cap that was removed to thread appellant's hose to the main line. This cap was a part of Twin Creek's water pipes and was completely destroyed. Caudle testified that, to protect the water flow through the line, the illegal tap had to be removed. Caudle also noted that the illegal tap caused damage to the main line. Removal of the illegal tap and repairs to be main line resulted in $470.62 in repair costs to Twin Creek. Howard Hooks, a former employee of Twin Creek, explained that he repaired the damage to the water line caused by appellant's improper connection using a full circle clamp and removing a brass saddle tap and appellant's hose.

Viewing the evidence in the light most favorable to the verdict, a rational factfinder could have concluded that the illegal tap into Twin Creek's main line caused damage to the main line and destroyed a portion of the main line so as to satisfy the damage or destruction element of the offense of criminal mischief. *See* TEX. PENAL CODE ANN. § 28.03(a)(1); *Miller*, 343 S.W.3d at 501; *see also Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732-33; *Villa*, 514 S.W.3d at 232.

As stated above, appellant also challenges the identity element of the criminal-mischief charge. The State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Rice v. State*, 801 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd)). Identity may be proved by direct or circumstantial evidence. *Id.* (citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "In fact, identity may be proven by inferences." *Id.* (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981)); *see Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.); *see also Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining that the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to inferences that may reasonably be drawn from evidence).

In this issue, appellant contends that he could not have been the person to dig and illegally tap into Twin Creek's water line because of a motorcycle accident that caused damage to appellant's knee and other bones in his leg and left appellant wheelchair-bound for eighteen months. We disagree.

First, the record establishes that there was a five-month period of time between September 2016, when the water meter was removed from appellant's line, and

appellant's accident in February 2017. A rational factfinder could have concluded beyond a reasonable doubt that this was more than enough time for appellant to be healthy enough to complete the diversion of water. Furthermore, the record also shows that appellant owned the hose that illegally tapped into the main line, and Caudle traced the hose that was illegally connected to the main line through thick cane to appellant's trailer. Moreover, Caudle had a discussion with appellant where she asked if he had tapped the line to which appellant responded, "It was his line." Caudle took that to mean that appellant "tapped into our line." Caudle further testified that there was grass and vegetation growing over the location of the tap, indicating that "seasons," or "at lease [sic] six or seven months" had passed since the illegal tap had been installed. Indeed, several exhibits presented by the State showed the water puddle that led to the discovery of the illegal tap, as well as the mature condition of the grass and vegetation over the tap.

And finally, appellant testified that he lived at the house for most of the time since the early 1990's and that since mid-2016, he lived alone, except for a brief period of time when his daughter and her boyfriend stayed with him. Appellant also provided contradictory testimony regarding the water source to his house. Initially, he stated there was no water supply to his house and that he received water from friends and his father, which was transported using ice chests and five-gallon water jugs. Later, he acknowledged that he used water from outlets inside his house in the days before March 22, 2018, and explained that perhaps his father had turned on the water. Appellant

recounted that he paid to have the water line to his house installed in December 1992, and that he signed up for water service from Twin Creek the same month. However, appellant's water service was discontinued in mid-2016 for non-payment, and a lock was placed on appellant's meter. This did not prevent appellant from obtaining water, as 14,500 gallons of water passed through appellant's meter in a three-month period ending in September 2016. As a result of this, Twin Creek removed the meter from appellant's line.

Viewing the evidence in the light most favorable to the verdict, a rational factfinder could have found beyond a reasonable doubt that appellant was involved in illegal tapping of the Twin Creek water line that resulted in the criminal-mischief charge. *See Johnson*, 673 S.W.2d at 196; *Clark*, 47 S.W.3d at 214; *Roberson*, 16 S.W.3d at 167; *Jones*, 900 S.W.2d at 399; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Zuniga*, 551 S.W.3d at 732-33; *Villa*, 514 S.W.3d at 232. Accordingly, we cannot say that the evidence pertaining to the identity element of the charged offense of criminal mischief is insufficient. *See* TEX. PENAL CODE ANN. § 28.03(a)(1); *Miller*, 343 S.W.3d at 501; *Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Zuniga*, 551 S.W.3d at 732-33; *Villa*, 514 S.W.3d at 232. As such, we overrule both of appellant's issues in appellate cause number 10-20-00056-CR.

### III.   CONCLUSION

Having overruled all of appellant's issues in both appellate cause numbers, we affirm the judgments of the trial court in appellate cause numbers 10-20-00055-CR and 10-20-00056-CR.


JOHN E. NEILL
Justice

Before Chief Justice Gray
      Justice Davis, and
      Justice Neill
Appeals Affirmed
Opinion delivered and filed October 21, 2020
Do not publish
[CR25]

