# NO. 12-20-00017-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *WILLIAM LARRY FOLEY,* *APPELLANT* | *§* | *APPEAL FROM THE 7TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

The Texas Court of Criminal Appeals remanded this case to us to determine if the "time payment" fee in the judgment should be struck as prematurely assessed in light of ***Dulin v. State***, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021).[1]  We modify the judgment and affirm as modified.

### BACKGROUND

Appellant was indicted for burglary of a habitation with the intent to commit assault, a second-degree felony.[2]  Appellant entered a plea of "not guilty" and the case proceeded to a jury trial.  The jury found Appellant "guilty" as charged in the indictment.  Appellant elected to have the trial court assess his punishment.  Appellant pleaded "true" to the State's allegations that he had previously been finally convicted of two sequential felony offenses, elevating his punishment range to imprisonment for twenty-five years to ninety-nine years or life.[3]  The trial court sentenced Appellant to life imprisonment.  This appeal followed.

---

[1] ***Foley v. State***, PD-1257-20, 2021 WL 1940243, at *1 (Tex. Crim. App. May 12, 2021).

[2] TEX. PENAL CODE ANN. § 30.02(c)(2) (West 2019).

[3] *Id.* § 12.42(d) (West 2019).

In his first issue, Appellant argues that the evidence is insufficient to support his conviction. Specifically, he contends the evidence is insufficient to establish that he is the individual who committed the burglary.

## Standard of Review

In Texas, the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 316–17, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See id.*, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is examined in the light most favorable to the verdict. *Id.* A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the factfinder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899–900. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented supports a

conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

**Applicable Law**

As pertinent to this case, a person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with the intent to commit assault. TEX. PENAL CODE ANN. § 30.02 (a)(1) (West 2019). One manner in which a person commits assault is if he intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 22.01 (a)(1) (West Supp. 2020).

The State must prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *Johnson v. State,* 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Rice v. State*, 801 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd)). Identity may be proved by direct or circumstantial evidence. *Robertson*, 16 S.W.3d at 167 (citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "In fact, identity may be proven by inferences." *Robertson*, 16 S.W.3d at 167 (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981)); *see Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.); *see also Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining that jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to inferences that may reasonably be drawn from evidence).

**The Evidence at Trial Regarding Identity**

Twilajoy Whitehead, the victim of the burglary, testified she was alone in her apartment on South Kennedy Avenue in Tyler, Texas during the early morning hours of April 16, 2019. When she heard loud noises outside, Whitehead went to lock the partially open front door. As

she attempted to lock the door, a man forced his way through the door and into her apartment. Whitehead testified that the man hit her in the face and choked her with her necklace. When her necklace broke, the man began choking her with his hands. Whitehead recalled falling to the ground and the attacker getting on top of her and choking her with his hands. She lost consciousness and when she came to, her roommate's boyfriend, Benjamin Seastrunk, and the apartment maintenance man were pulling the man off her. Whitehead believed she scratched the man while trying to defend herself. She was unable to recall how or when the man left the scene. Whitehead's roommate, Lauren Coon, called law enforcement. Whitehead could not identify Appellant as her attacker, but recalled the attacker was a tall, black, bald male. Whitehead testified she believed the attacker's family lived in the apartment next door, because after the attack she went outside to smoke a cigarette and the residents of the apartment threatened to "beat her up" if "the law got called."

Coon testified she was upstairs at a neighbor's apartment during the burglary. Coon heard loud banging noises and returned to her apartment where she found Whitehead on the ground with a man on top of her and his hands around her throat and his knees on her chest. Coon recognized the man because she had seen him "around the apartments" but she did not know his name. Coon testified the man was a light skinned black male with a bald head, wearing no shirt and a pair of dark shorts. She described the man as between five feet six inches and five feet eight inches tall with a small to medium, but muscular build. Coon testified that Seastrunk recalled observing tattoos on the man. She testified that the man left the apartment on foot and walked to the right of the apartment building. Coon called law enforcement, reported the burglary, and gave the emergency services dispatcher the man's physical description and direction of travel. Coon testified the attacker's family members, who resided next door, refused to tell her the attacker's name.

Tyler Police Department Officer Adam Riggle responded to the scene and spoke with Whitehead, Coon, and Seastrunk. Riggle testified that the three individuals collectively described the attacker as a light skinned black male, bald headed, short in stature, muscular in build, wearing dark shorts but no shirt, with visible tattoos, and a hairy chest. Riggle broadcasted the attacker's description to other officers in the area who were searching for the suspect.

Officers Joshua Darty and Joshua Allen both testified they were en route to the Kennedy Avenue apartment complex when Riggle asked them to search the nearby area for the suspect, who was reported to be on foot. Darty testified they located Appellant shortly after receiving Riggle's description. Appellant was found walking on a sidewalk within a block or two of the Kennedy Avenue apartment complex. Allen and Darty testified that Appellant matched the description of the attacker and was traveling on foot in the direction of travel described by Coon.

Both Darty and Allen wore body cameras that captured video and audio footage of their contact with Appellant. This footage was introduced at trial. The footage confirms that Appellant matched the suspect description given by Whitehead, Coon, and Seastrunk. The footage showed Darty approach Appellant and tell him he matched the description of an assault suspect. Appellant asked Darty if the witnesses said he had tattoos, and Darty responded that the witnesses described the suspect as having tattoos. Appellant denied assaulting anyone and further denied even being at the Kennedy Avenue apartment complex. Darty asked Appellant about a bleeding cut on Appellant's chin, and Appellant told Darty that he "got into it" with his girlfriend "awhile ago." Darty pointed out that the cut was bleeding and fresh, and asked Appellant if he "wanted to change his story." Appellant then told Darty that "she started squabbling with a [expletive]." Darty asked Appellant to clarify who started squabbling with him. Appellant told Darty he was at his niece's home and got into a squabble with a girl that he did not know, the "chick was tripping," and hit him in the eye area, and he grabbed the girl, who slipped and fell. He told Darty the girl was "full of liquor" and stated "[we] can go over there right now." Appellant asked Allen if "she said I hit her." Appellant then told Allen that his niece told him to leave her home because the police were called. Darty transported Appellant to the Kennedy Avenue apartment complex. Darty testified and the footage confirms that Appellant did not dispute the location of the "squabble" but reiterated to Darty that the girl was "drunk."

Riggle testified he arrested Appellant at the scene based on all the evidence and transported Appellant to jail. Riggle's in car camera captured video and audio footage of the transport. During this footage, which was played for the jury, Appellant tells Riggle that his niece lives in the Kennedy Avenue apartment complex. Riggle, Darty, and Allen identified Appellant in open court, in the jury's presence, as the individual they arrested for the burglary.

5

**Analysis**

As previously stated, a person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with the intent to commit assault. TEX. PENAL CODE ANN. § 30.02 (a)(1). Appellant does not challenge the State's proof on any element of the offense except identity. Identity may be proved by direct or circumstantial evidence, or by inferences. *Robertson*, 16 S.W.3d at 167. When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused. *Id.* Furthermore, proof by circumstantial evidence is not subject to a more rigorous standard than proof by direct evidence; direct and circumstantial evidence are equally probative for purposes of proving guilt beyond a reasonable doubt. *Id.* The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish guilt. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The absence of an in court identification does not render the evidence insufficient if there is other evidence sufficient to identify the defendant as the perpetrator. *Couchman*, 3 S.W.3d at 162.

While no witness at trial identified Appellant as the burglar, the record contains ample circumstantial evidence to establish Appellant's identity as the burglar. Appellant matched the detailed physical description given by Whitehead, Coon, and Seastrunk. Further, Appellant was apprehended on foot near the scene shortly after the burglary. Appellant initially denied assaulting anyone or being at the Kennedy Avenue apartment complex but later admitted to having a physical altercation with a woman at the Kennedy Avenue apartment complex. Appellant also acknowledged that his niece lived at the Kennedy Avenue apartment complex and admitted to leaving the apartment complex because his niece told him the police were called. This is consistent with Whitehead's and Coon's testimony that Appellant's family lived next door and did not want the police called. Moreover, Appellant had a bleeding cut on his chin, consistent with Whitehead's testimony that she scratched the attacker. The cumulative effect of the evidence is sufficient to circumstantially prove that Appellant was the individual who burglarized and assaulted Whitehead. *See Robertson*, 16 S.W.3d at 167; *Alexander*, 740 S.W.2d at 758; *see also McKee v. State*, No. 14-18-00671-CR, 2020 WL 3862328, at *4 (Tex. App.— Houston [14th Dist.] July 9, 2020, no pet.) (mem. op., not designated for publication) (circumstantial evidence sufficient to prove identity in burglary prosecution despite no in court

6

identification); *see also Benitez v. State*, No. 03-10-00185-CR, 2010 WL 4909954, at *2 (Tex. App.—Austin Dec. 1, 2010, no pet.) (mem. op., not designated for publication) (same). Thus, viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant committed burglary of a habitation with the intent to commit assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1); 30.02(a)(1); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 899. Accordingly, we overrule Appellant's first issue.

## COURT COSTS

In Appellant's second issue, he argues that the trial court erred in assessing a "time payment" fee previously authorized by Texas Local Government Code, Section 133.103 in its judgment.[4] On original submission, the State conceded that this fee is facially unconstitutional.

Several courts, including this one, have held subsections (b) and (d) of Section 133.03 unconstitutional. *See, e.g.*, *Irvin v. State*, No. 12-19-00347-CR, 2020 WL 5406276, at *7 (Tex. App—Tyler Sept. 9, 2020), *vacated*, 2021 WL 1940593 (Tex. Crim. App. May 12, 2021); *Ovalle v. State*, 592 S.W.3d 615, 618 n.1 (Tex. App.—Dallas 2020), *vacated*, 2021 WL 1938672 (Tex. Crim. App. May 12, 2021); *Simmons v. State*, 590 S.W.3d 702, 712 (Tex. App.—Waco 2019), *vacated*, 2021 WL 1938758 (Tex. Crim. App. May 12, 2021); *Johnson v. State*, 573 S.W.3d 328, 340 (Tex. App.—Houston [14th Dist.] 2019), *vacated*, 2021 WL 1939984 (Tex. Crim. App. May 12, 2021). However, the Court of Criminal Appeals has recently held that the pendency of an appeal stops the clock for the purposes of the time payment fee. *Dulin*, 620 S.W.3d at 133.

Fines are punitive and intended to be part of the convicted defendant's sentence. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). Court costs, however, are "compensatory in nature" and are "a non-punitive recoupment of the costs of judicial resources

---

[4] The Texas Legislature passed legislation, effective January 1, 2020, that transfers Texas Local Government Code, Section 133.103 to Texas Code of Criminal Procedure, Article 102.030 and revises the statute to provide that all of the fees collected under the section are "to be used for the purpose of improving the collection of outstanding court costs, fines, reimbursement fees, or restitution or improving the efficiency of the administration of justice in the county or municipality." *See* Act of May 23, 2019, 86th Leg., R.S., S.B. 346, § 2.54, 2019 Tex. Sess. Law Serv. Ch. 1352. The changes apply only to a cost, fee, or fine assessed on a conviction for an offense committed on or after the effective date of the Act. *Id.* § 5.01. Because the offense in this case was committed before January 1, 2020, the former law applies. *See Ovalle v. State*, 592 S.W.3d 615, 617 n.1 (Tex. App.–Dallas 2020), *vacated on other grounds*, 2021 WL 1938672 (Tex. Crim. App. May 12, 2021).

expended in connection with the trial of the case." *Id*.; ***Williams v. State***, 495 S.W.3d 583, 590 (Tex. App.—Houston [1st Dist.] 2016), *pet. dism'd, improvidently granted*, 2017 WL 1493488 (Tex. Crim App. 2017).

Here, the judgment of conviction reflects that the trial court assessed $344.00 in court costs. The judgment includes a document identified as "Order to Withdraw Funds," which states that Appellant incurred "[c]ourt costs, fees and/or fines and/or restitution" in the amount of $344.00. The certified bill of costs itemizes the court costs imposed, which total $344.00 with a $344.00 balance remaining. The bill of costs includes a $25.00 time payment fee and includes a paragraph stating that a $15.00 fee will be assessed if any part of the court costs is paid on or after the 31st day after the date the judgment assessing the court costs is entered.[5] *But see* TEX. LOC. GOV'T CODE ANN. § 133.103(c) *redesignated as* TEX. CODE CRIM. PROC. ANN. art. 102.030 (West Supp. 2020) (treasurer shall deposit ten percent of fees collected under this section in general fund of county or municipality for purpose of improving efficiency of administration of justice in county or municipality).

As previously stated, the Texas Court of Criminal Appeals recently explained that the pendency of an appeal stops the clock for purposes of the time payment fee. ***Dulin***, 620 S.W.3d at 133. Consequently, the assessment of the time payment fee in Appellant's case is premature, and the fee should be struck in its entirety, without prejudice to being assessed later if, more than thirty days after the issuance of the appellate mandate, Appellant has failed to completely pay his court costs. *See **id.***

The proper remedy when a trial court erroneously includes amounts as court costs is to modify the judgment to delete erroneous amounts. *See **Sturdivant v. State***, 445 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Accordingly, we will modify the trial court's judgment and attached order to withdraw funds to reflect the appropriate assessment of court costs that do not include the time payment fee. *See **Dulin***, 620 S.W.3d at 133. Appellant's second issue is sustained.

---

[5] The bill of costs contains a chart describing each fee and listing the "fee code," as well as the amount of the fee and the balance due. The bill reflects that the total amount of court costs assessed is $344.00, which includes the $25.00 "time payment" fee, but not the $15.00 "additional time payment fee" referenced in the paragraph below the chart.

## DISPOSITION

Having sustained Appellant's second issue, we ***modify*** the trial court's judgment and attached order to withdraw funds to reflect that the amount of court costs is $319, by deleting the time payment fee, without prejudice to it being assessed later, if more than thirty days after the issuance of our mandate, Appellant fails to completely pay his court costs.  *See* TEX. R. APP. P. 43.2(b).  We further ***modify*** the bill of costs to reflect same*. See **id**.*  In all other respects, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered October 20, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 20, 2021**

**NO. 12-20-00017-CR**

**WILLIAM LARRY FOLEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0984-19)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that the judgment of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **modified** to withdraw funds to reflect that the amount of court costs is $319, by deleting the time payment fee, without prejudice to it being assessed later, if more than thirty days after the issuance of our mandate, Appellant fails to completely pay his court costs.; in all other respects the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*