

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00280-CR
No. 02-22-00281-CR

———————————————————

TERRANCE PARKMAN, Appellant

V.

THE STATE OF TEXAS

―――――――――――――――――――――――――――――――――――――

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court Nos. 1652275D, 1653590D

―――――――――――――――――――――――――――――――――――――

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

Appellant Terrance Parkman appeals his convictions on six counts—murder, reckless aggravated assault, deadly conduct, and three counts of engaging in organized criminal activity—arising from a drive-by shooting at a convenience store.[1]  *See* Tex. Penal Code Ann. §§ 19.02(b), 22.02(a)(2), 22.05(b)(2), 71.02(a).  On appeal, Parkman argues in a single issue[2] that the evidence is legally insufficient to support his convictions.  We will affirm.

## I. BACKGROUND

On August 4, 2020, Jamarius Brown, a seventeen-year-old rapper and a member of the Pacman gang, was killed in a drive-by shooting at a Grand Prairie convenience store.  Another customer, Joshua Connor, was shot in the leg.

The shots were fired from the backseat, driver-side window of a white Acura SUV.  Brown's friend Jemario Freeman, who had accompanied him to the

---

[1]The trial court established two separate cause numbers for Parkman's various offenses: Cause No. 1652275D for murder and the related engaging-in-organized-criminal-activity offense and Cause No. 1653590D for aggravated assault, deadly conduct, and the two related engaging-in-organized-criminal-activity offenses. Parkman has filed an appeal in each case.  Because he raises the same arguments in each appeal, we address both appeals in this opinion.

[2]In the "Issues Presented" section of his brief, Parkman lists only a single issue: "Whether the evidence was legally sufficient to support the conviction."  But in the body of his brief, he separately addresses the legal sufficiency of the evidence to support his convictions for the offenses charged in Cause No. 1652275D and those charged in Cause No. 1653590D and categorizes them as "Point of Error Number One" and "Point of Error Number Two."  Because all of Parkman's charged offenses arise from the same conduct, we will treat his evidentiary-sufficiency arguments as a single issue.

convenience store, described the shooter to police as a light-skinned African American male with wide-set eyes and distinctive cheekbones. Tramaine Turner, a convenience-store employee who had witnessed the shooting from his car in the parking lot, also described the shooter as light-skinned, but he was unsure whether the shooter was African American, Hispanic, or Asian.

The Grand Prairie Police Department issued a "be on the lookout" (BOLO) instructing law enforcement agencies to look for a white Acura SUV heading east from Grand Prairie. A little more than one hour after issuing the BOLO, they received a call from the Greenville Police Department informing them that a reportedly stolen white Acura SUV had been stopped heading eastbound on Interstate 30 in Cumby, Texas; that all of the occupants had given Grand Prairie- or Arlington-area addresses; and that the driver—Parkman—was a registered gang member.

Cumby Police Officer Jonathan Painter was one of the officers that stopped the Acura SUV.[3] He testified that Parkman, despite being confined to a wheelchair, was in the driver's seat and appeared to have been operating the vehicle using a long-handled squeegee to push the accelerator and brake pedals. The officers searched the vehicle for weapons and found an unspent S&B nine-millimeter bullet inside a fanny

---

[3]Because the vehicle was detected in a remote area near the border between Hopkins County and Hunt County, officers from the Hopkins County Sheriff's Office, Hunt County Sheriff's Office, Cumby Police Department, and Greenville Police Department participated in the stop.

pack attached to Parkman's wheelchair. The bullet's brand[4] and caliber matched bullet casings found at the crime scene.[5]

When Detective Renteria arrived on the scene of the traffic stop, he observed that Parkman fit Freeman's and Turner's descriptions of the shooter, but the three passengers—all of whom were African American males with darker complexions—did not. When Detective Renteria interviewed the three passengers, one of whom was a juvenile, they all gave conflicting stories about their destination and why they were driving to East Texas. According to Detective Renteria, one of the passengers said that when Parkman had picked him up, he had heard that "something major had happened" and that the men needed to leave Texas.[6]

---

[4]Grand Prairie Detective Adrian Renteria explained that S&B is a low-quality ammunition brand that is not commonly used.

[5]Of the four bullet casings found at the crime scene—all of which were nine-millimeter—two were S&Bs, one was a Winchester, and one was a Blazer. A firearms examination determined that all four bullets had been fired from the same weapon.

[6]Parkman objected to this statement on hearsay grounds. The trial court overruled the objection and admitted the statement for the limited purpose of showing the effect on the listener and the absence of mistaken identity. *See Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999) ("[A] statement which is not offered to prove the truth of the matter asserted, but is offered for some other reason, is not hearsay."); *Sosa v. State*, No. 05-11-01294-CR, 2012 WL 5936295, at *3 (Tex. App.—Dallas Nov. 28, 2012, no pet.) (mem. op., not designated for publication) ("[I]f a statement is offered to show the effect on the listener, rather than for the truth of the matter asserted, then the statement is not hearsay." (first citing *Young v. State*, 10 S.W.3d 705, 712 (Tex. App.—Texarkana 1999, pet. ref'd); and then citing *In re Bexar Cnty. Crim. Dist. Att'y's Off.*, 224 S.W.3d 182, 189 (Tex. 2007) (orig. proceeding)); *see also* Tex. R. Evid. 801(d).

4

Gunshot residue (GSR) swabs were collected from Parkman and the three passengers and sent to the Tarrant County Medical Examiner's Office (TCME) for GSR analysis. Parkman and one of the adult passengers had particles consistent with GSR on their hands, and the juvenile passenger, B.C., had a "characteristic particle" on his hand.[7]

After Freeman, who witnessed the August 4, 2020 drive-by shooting, identified Parkman as the shooter in a photo lineup,[8] Parkman was arrested and charged with six offenses in connection with the shooting. Specifically, the indictments alleged that Parkman had (1) committed murder by shooting Brown, (2) committed aggravated assault with a deadly weapon by shooting Connor, and (3) engaged in deadly conduct by shooting "at or in the direction of" the convenience store. *See* Tex. Penal Code Ann. §§ 19.02(b), 22.02(a)(2), 22.05(b)(2). In addition, the indictments charged Parkman with three counts of engaging in organized criminal activity because he had allegedly committed each of the aforementioned offenses "with the intent to establish, maintain, or participate as a member of a criminal street gang." *See id.* § 71.02(a).

---

[7]As Vicki Hall, a TCME trace-evidence examiner, explained at trial, a characteristic particle contains all three major-component elements—antimony, barium, and lead—of the primer mixture used in ammunition cartridges. She likened such a particle to the "star of the movie" for purposes of a GSR analysis. Consistent particles—like the ones found on Parkman's hands—contain only two of the three elements. In Hall's analogy, such particles are "the supporting cast."

[8]Freeman identified Parkman as the shooter, but he indicated that his level of certainty was only "four to six" out of ten.

5

A jury convicted Parkman of all six offenses[9] and assessed his punishment at thirty-five years in prison and a $3,500 fine for murder and the related engaging-in-organized-criminal-activity offense, twenty years in prison and a $2,000 fine for the remaining engaging-in-organized-criminal-activity offenses and the reckless aggravated assault offense, and ten years in prison and a $1,000 fine for the deadly conduct offense. The trial court sentenced Parkman accordingly.[10] This appeal followed.

## II. DISCUSSION

In a single issue, Parkman asserts that the evidence is legally insufficient to support his convictions. Specifically, Parkman asserts that the record contains insufficient evidence to identify him as the shooter. We disagree.

## A. Standard of Review and Applicable Law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex.

---

[9]Although the indictment alleged only intentional or knowing mental states with respect to the aggravated assault offense, the trial court's jury charge included reckless aggravated assault as a lesser-included offense instruction. *See Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (noting that "a trial court [does] not err by including reckless aggravated assault as a lesser-included-offense instruction" when the indictment alleges only intentional or knowing mental states (citing *Reed v. State*, 117 S.W.3d 260, 264 (Tex. Crim. App. 2003))). The jury convicted Parkman of reckless aggravated assault. *See* Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(2).

[10]Parkman's sentences are to run concurrently.

Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by

7

state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

Direct evidence of each element is not required, and "[c]ircumstantial evidence alone is sufficient to establish guilt." *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Thus, "[i]dentity may be proved through direct or circumstantial evidence, and through inferences." *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (first citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981); then citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); then citing *Roberson v. State*, 16 S.W.3d 156, 157 (Tex. App.—Austin 2000, pet. ref'd); then citing *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); and then citing *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "No formalized procedure is required for the State to prove the identity of the accused." *Garcia v. State*, No. 13-22-00001-CR, 2022 WL 3257538, at *6 (Tex. App.—

Corpus Christi–Edinburg Aug. 11, 2022, no pet.) (mem. op., not designated for publication) (citing *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018)).

## B. The Evidence Sufficiently Showed That Parkman Was the Shooter

Parkman's appeal is grounded on his contention that the evidence is insufficient to support the jury's finding that he was the shooter in the August 4, 2020 drive-by.

The following evidence supports the jury's determination that Parkman was the shooter:

- The shots were fired from a white Acura SUV, and Parkman was found driving a reportedly stolen white Acura SUV eastbound on Interstate 30 a few hours after the shooting occurred;

- The Acura SUV was stopped near Cumby, Texas, which is approximately eighty miles northeast of Grand Prairie, but Parkman and his three passengers all provided police with Grand Prairie- or Arlington-area addresses and told conflicting stories about why they were headed to East Texas;

- While searching the stolen Acura SUV for weapons, the police found an unspent S&B nine-millimeter cartridge inside a fanny pack attached to Parkman's wheelchair. The cartridge's brand—which is not commonly used—and caliber matched bullet casings found at the crime scene;[11]

---

[11]While Parkman acknowledges in his brief that the unspent cartridge found in the fanny pack was the same brand and caliber as some of the shell casings recovered from the crime scene, he notes that the unspent cartridge was discovered "over [four] hours after the shooting" and asserts that "[t]here was no other connection between the bullet and the spent shell casings" recovered from the crime scene. However, Parkman fails to explain—and we do not see—how the four-hour time lapse between the shooting and the cartridge's discovery diminishes the probative force of this evidence. Further, the cartridge's connection to the spent shell casings is self-evident:

9

- Parkman fit Freeman's and Turner's descriptions of the shooter's complexion and Freeman's description of the shooter's physical features, but the Acura SUV's other occupants did not—Parkman has lighter skin while the other three occupants have darker complexions;

- Freeman identified Parkman as the shooter in a photographic lineup with a confidence level of "four to six" out of ten;[12]

- TCME's analysis of GSR swabs collected from Parkman and the Acura SUV's three passengers showed that Parkman and one adult passenger had particles consistent with GSR on their hands and that the juvenile passenger, B.C., had a characteristic particle on his hands;[13]

- Detective Renteria testified that the Acura SUV made a sharp turn in the convenience-store parking lot, reversed direction immediately before the shots were fired, and then made another sharp turn back onto the roadway to flee the scene. He opined that because these driving maneuvers are difficult and because Parkman is wheelchair-bound and has to use a long-handled squeegee to drive, it is highly unlikely that he was driving the Acura SUV at the time of the shooting, a factor that is consistent with his being in the driver-side backseat from which the shots were fired;

---

they are the same caliber and uncommonly used brand. Parkman fails to explain how the lack of any "other connection" might impact our legal-sufficiency analysis.

[12]As discussed below, when asked at trial if he saw the shooter in the courtroom, Freeman responded, "I don't know."

[13]As Hall, the TCME trace-evidence examiner who analyzed the GSR swabs, candidly acknowledged, GSR testing can never definitively determine whether a person fired a gun or not "[b]ecause the particles are easily transferred or easily removed from [a] person's hands. . . . The presence [of GSR particles] could mean that [a person was] in the environment, either discharging the firearm themselves, or in close proximity or touching something with GSR on it." But, at a minimum, the GSR found on Parkman's and the two passengers' hands supports an inference that they either had recently fired a gun or had been in close proximity to a gun as it was fired, *see Santos-Garcia v. State*, No. 08-13-00324-CR, 2017 WL 5899176, at *5 (Tex. App.—El Paso Nov. 30, 2017, no pet.) (not designated for publication), a circumstance that is consistent with their involvement in the drive-by shooting.

10

- Parkman is a self-professed "[c]ertified" gang member, and his Instagram account contains numerous photographs of firearms, gang-affiliated topics, and gang hand gestures. Brown, the target of the drive-by, belonged to a rival area gang;

- Parkman is a known local rapper and stated on Instagram that only he is allowed to have red dreads; Brown was also a rapper with red dreads.

While none of these individual pieces of evidence, when considered in isolation, is sufficient to prove that Parkman was the shooter, their combined and cumulative force when viewed in the light most favorable to the convictions provides a rational basis for the jury's verdict. *See Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015) (instructing that in a legal-sufficiency review, an appellate court should "consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt"); *see also Villa*, 514 S.W.3d at 232 (admonishing that courts "must not engage in a 'divide and conquer' strategy" when conducting a legal-sufficiency review "but must consider the cumulative force of all the evidence"); *cf. Ingerson*, 559 S.W.3d at 509–11 (concluding circumstantial evidence was sufficient to identify defendant as perpetrator where he was the last person to see the deceased victims alive; he had animosity toward one victim; he owned a .38 caliber handgun, which was the same caliber weapon used to kill the victims; he was dishonest with police about his ownership of the handgun and other matters; and he

had gunshot residue particles on his pants and on the carpet underneath the seat of his car, both of which he had unsuccessfully tried to clean); *Reason v. State*, No. 05-21-00701-CR, 2022 WL 16959266, at *4 (Tex. App.—Dallas Nov. 16, 2022, no pet.) (mem. op., not designated for publication) (concluding that evidence was sufficient to identify appellant as the shooter where surveillance video showed that appellant was at the same shopping center as the victim shortly before the shooting, that he was the only person in his vehicle, and that he had followed the victim's vehicle out of the parking lot; witnesses testified "that the two cars were speeding or 'semi-racing'" and that shots were fired from appellant's car as it pulled up next to the victim's car; and gunshot residue was found on the passenger-side headliner of the appellant's vehicle).

To support his argument that the State presented insufficient evidence to identify him as the shooter, Parkman points to Freeman's failure to identify Parkman as the shooter in open court and to Freeman's confidence level of "four to six" out of ten when he identified Parkman in the photo lineup. However, Freeman's failure to identify Parkman in open court does not, in and of itself, render the evidence insufficient. *See Clifford v. State*, No. 02-17-00401-CR, 2018 WL 6565786, at *3 (Tex. App.—Fort Worth Dec. 13, 2018, no pet.) (mem. op., not designated for publication) (rejecting DWI-convicted appellant's argument that witness's inability to identify him in open court rendered evidence insufficient to show that he drove a vehicle in a public place); *Murray v. State*, No. 02-11-00103-CR, 2012 WL 3030520, at *3 (Tex. App.—Fort Worth July 26, 2012, no pet.) (mem. op., not designated for publication)

12

(concluding that evidence was sufficient to support conviction even though lone eyewitness who had previously identified the appellant at the scene of the arrest was unable to identify him at trial). Rather, Freeman's failure to identify Parkman at trial—which was before the jury for its consideration—merely goes to the weight and credibility of his testimony. *See Clifford*, 2018 WL 6565786, at *3 (citing *Earls*, 707 S.W.2d at 85); *Meeks v. State*, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth 1995, no pet.); *see also Gallien v. State*, Nos. 01-09-00968-CR, 01-09-00969-CR, 2011 WL 1530859, at *3 (Tex. App.—Houston [1st Dist.] Feb. 24, 2011, no pet.) (mem. op., not designated for publication) (pointing out that "the law does not require an in-court identification" and that a witness's failure to identify a defendant in court "is merely one factor to consider in assessing the weight and credibility of a witness's testimony" (first citing *Conyers v. State*, 864 S.W.2d 739, 740 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd); and then citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986))). The same holds true for Freeman's "four to six" confidence level when identifying Parkman in the photo lineup. *See Anderson v. State*, 813 S.W.2d 177, 179 (Tex. App.—Dallas 1991, no pet.) (holding that if other evidence corroborates a witness's identification, "[a] witness's uncertainty goes to the weight of the testimony and is for the jury" (citing *Ates v. State*, 644 S.W.2d 843, 845 (Tex. App.—Tyler 1982, no pet.))). In our legal-sufficiency review, we may not re-evaluate the evidence's weight and credibility or substitute our judgment for the jury's. *Queeman*, 520 S.W.3d at 622.

Parkman also points to the TCME's GSR analysis to support his legal-insufficiency argument. Emphasizing the fact that B.C. had a characteristic GSR particle on his hands while Parkman's hands contained only particles consistent with GSR, Parkman contends that the TCME's GSR analysis shows that B.C. "was most likely to be the shooter." But this is not the case. As Parkman acknowledges, Hall, the TCME trace-evidence examiner, explained that GSR testing can never definitively determine whether someone fired a gun "[b]ecause the particles are easily transferred or easily removed from a person's hands" and that even though B.C. had a characteristic particle on his hands and Parkman had only consistent particles on his, Parkman could just as easily have been the shooter. Thus, while the GSR analysis supports an inference that Parkman, B.C., and one of the Acura SUV's adult passengers either had recently fired a gun or had been in close proximity to a gun as it was fired, *see Santos-Garcia*, 2017 WL 5899176, at *5, a circumstance consistent with their involvement in the drive-by shooting, it does not indicate that B.C. was more likely than Parkman to be the shooter (or vice versa) and, in light of the other evidence, certainly does not conclusively establish reasonable doubt as to the shooter's identity.

In sum, viewing the evidence—as we must—in the light most favorable to the verdict, we conclude that its combined and cumulative force and the reasonable inferences that could be drawn therefrom allowed the jury to rationally conclude

14

beyond a reasonable doubt that Parkman was the shooter. Accordingly, we overrule Parkman's sole issue.

### III. CONCLUSION

Having overruled Parkman's sole issue, we affirm the trial court's judgments of conviction.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 2, 2023